[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12602

_____

D. C. Docket No. 6:06-cv-00637-MSS-KRS

PLAINTIFFS' SHAREHOLDERS CORPORATION, et al.,

Plaintiffs-Appellees,

versus

SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 10, 2012)

Before DUBINA, Chief Judge, JORDAN, and ALARCON,* Circuit Judges.

PER CURIAM:

_____

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Southern Farm Bureau Life Insurance Company appeals the district court's denial of its motion to stay litigation and compel arbitration. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm in part, reverse in part, and remand.

I

This case, now on appeal before this court for the second time, stems from Southern Farm's purchase of a debenture from Plaintiffs' Shareholders Corporation in 2004.[1] The sale of the debenture was governed by an asset purchase agreement, which contained an arbitration clause:

> 10.2 <u>ARBITRATION</u>. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH HEREOF, SHALL BE SETTLED BY BINDING ARBITRATION IN GAINESVILLE, FLORIDA, IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

R1:309, Exhibit 3 at 9.

In 2006, unsatisfied with the price PSC received for the debenture, some of PSC's shareholders brought this derivative action against Southern Farm, asserting

---

[1] We write only for the parties and repeat only those facts necessary to address the issues presented. A thoroughly detailed factual background and procedural history of this case is set forth in our prior decision. *See Badger v. Southern Farm Bureau Life Ins. Co.*, 612 F.3d 1334 (11th Cir. 2010).

claims under Rule 10b-5 and § 10(b) of the Securities and Exchange Act of 1934 (Count 1) and Florida common-law fraud (Count 2). The plaintiffs alleged that Southern Farm made material misrepresentations and omissions during the negotiations, causing PSC to sell the debenture for less than its actual value. The case proceeded to trial and, on March 19, 2009, the jury found Southern Farm liable on both counts and awarded the plaintiffs $31.7 million. Southern Farm appealed.

Prior to our ruling in that appeal, on August 20, 2009, PSC initiated arbitration against Southern Farm. PSC asserted a single claim for breach of contract based on § 5.5 of the asset purchase agreement:

> 5.5    No Omissions or Untrue Statements. No representation or warranty made by Buyer in this Agreement, nor any statement or certificate furnished or to be furnished by Buyer to Seller pursuant hereto, or in connection with the transaction contemplated hereby, contains or will contain any untrue statement of material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

PSC sought to rely upon the doctrine of collateral estoppel and the jury's verdict to establish its breach of contract claim. Specifically, PSC purportedly sought to prohibit Southern Farm from readdressing previously litigated issues—i.e., whether Southern Farm improperly omitted material information during the negotiations and the amount of PSC's damages.

3

Southern Farm moved to dismiss the arbitration proceeding, arguing that the contract claim asserted was barred by the doctrine of *res judicata* and that PSC had waived its right to arbitrate the claim by litigating in federal court for more than three years. PSC opposed the motion, stating, in part, that the claims from the derivative action (securities fraud and common law fraud) did not fall within the scope of the arbitration provision, and therefore, it could not have waived its right to arbitrate the breach of contract claim. The arbitration panel never ruled on Southern Farm's motion to dismiss because it decided to postpone hearings on all pending motions until this court rendered its decision in the appeal from the jury verdict against Southern Farm.

On October 6, 2010, this court reversed and vacated the judgment entered against Southern Farm. *See Badger*, 612 F.3d at 1334. We held, among other things, that the jury instructions erroneously imposed a duty on Southern Farm to disclose material facts directly to PSC's shareholders without finding the existence of some fiduciary or special relationship.

On remand from our decision in *Badger*, the plaintiffs moved to realign PSC as a plaintiff (up to that point PSC had been considered a nominal defendant in the derivative action) and moved to amend its complaint. Although Southern Farm opposed the relief requested, the district court granted PSC's motion. The second

amended complaint added a breach-of-contract claim against Southern Farm (a claim similar to the one PSC asserted in the arbitration proceeding) and added allegations that Southern Farm owed PSC's board and shareholders a fiduciary or special duty, allegations that were not explicitly asserted in the prior complaints.

Shortly after the second amended complaint was filed, Southern Farm moved to stay the litigation and compel arbitration on all the claims asserted against it. PSC opposed the motion. The district court denied Southern Farm's motion, holding that the filing of the second amended complaint did not revive Southern Farm's right to compel arbitration and that PSC and its shareholders would be prejudiced by compelling arbitration.

Southern Farm now appeals the district court's order denying its motion to stay litigation and compel arbitration. First, Southern Farm contends that the district court was not the proper tribunal to decide the issue of whether it waived its right to arbitration, arguing that an arbitration panel should have addressed that issue. Second, Southern Farm argues that, even if the district court properly ruled on the waiver issue, it erred in finding that Southern Farm's right to compel arbitration was not revived by the filing of the second amended complaint.

## II

"We review a district court's denial of a motion to compel arbitration *de novo*."

5

*Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

A

The first issue we must address is whether the district court was the proper tribunal to decide the merits of PSC's waiver argument. Southern Farm contends that the district court erred in deciding the waiver issue itself because the arbitration provision in the asset purchase agreement evinces a clear intent by the parties to arbitrate such disputes. We disagree.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Nevertheless, because it is often difficult to determine whether parties intended to arbitrate certain threshold issues, we have developed presumptions governing the division of labor between courts and arbitrators with respect to certain questions. Relevant to the issue presented here, we recently held that questions regarding waiver based on litigation conduct are presumptively for the courts—and not the arbitrators—to decide. *See Grigsby & Assocs., Inc. v. M Securities Inv.*, 664 F.3d 1350 (11th Cir. 2011) Thus, absent "clear and unmistakable" evidence of an agreement to the contrary, disputes regarding conduct-based waiver are left to the courts to decide. *See First Options of Chicago, Inc.*, 514 U.S. at 944 (quoting *AT &*

6

*T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)) (brackets omitted). "Clear and unmistakable" evidence of an agreement to arbitrate "might include ... a course of conduct demonstrating assent ... or ... an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).

Southern Farm proceeds only on the theory that the arbitration clause constitutes an express agreement to arbitrate issues of conduct-based waiver. Although the arbitration provision does not make explicit reference to questions regarding conduct-based waiver, Southern Farm argues that clause's incorporation of the rules of the American Arbitration Association, and specifically Rule 7(a), evinces a clear intent to arbitrate such issues. AAA Rule 7(a) provides as follows:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

Southern Farm says that Rule 7(a) encompasses PSC's waiver objection because that objection is a challenge to the "validity" of the arbitration agreement itself.

Southern Farm cites to *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011), for support, but we find it distinguishable. In that case, Chevron initiated arbitration against Ecuador pursuant to Ecuador's Bilateral Investment Treaty with the United States, which creates a mechanism for foreign investors to initiate arbitration against signatories to the treaty. After Chevron filed its notice of

7

arbitration (the only action required to create a binding arbitration agreement under the treaty), Ecuador petitioned the district court to stay the arbitration, arguing that Chevron waived its right to arbitrate its claims based on its prior litigation-related activities. In response, Chevron argued that Ecuador's waiver claim should be decided by an arbitration panel, and not the district court.

The Second Circuit held that the parties had agreed to arbitrate the conduct-based waiver claim pursuant to Article 21 of the Arbitration Rules of the United Nations Commission on International Trade Law. Article 21, which is substantially similar to AAA Rule 7(a), provides that the arbitrator "shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the ... arbitration agreement." *Id.* at 394 (quotations omitted). Notwithstanding the apparent similarities, *Republic of Ecuador* is easily distinguishable. Ecuador argued that Chevron made prior representations to a federal district court that prohibited it from even initiating the arbitration proceeding against Ecuador, the action required to form a binding arbitration agreement. Thus, the Second Circuit found that Ecuador's waiver claim undermined the agreement itself (i.e., its validity), as opposed to arguing that Chevron was "prevented from taking advantage of an admittedly binding arbitration clause." *Id.* at 394. Here, PSC's waiver argument is not a challenge to the existence of the asset purchase agreement (or its

8

arbitration clause), and as a result, it does not constitute an objection to the "validity"of the agreement as that term is used in AAA Rule 7(a).

Moreover, Southern Farm is unable to point to (and we are unable to find) any other contractual language that would constitute clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver. Accordingly, we conclude that the district court properly addressed the waiver issue. *See Grigsby & Assocs., Inc.*, 664 F.3d at 1354. *See also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) ("There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so.").

## B

We now proceed to address whether Southern Farm's right to compel arbitration was revived by the plaintiffs' filing of the second amended complaint. Normally, "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1365 (11th Cir. 1995). Nonetheless, where a plaintiff files an amended complaint that "unexpectedly changes the scope or theory of the plaintiff's claims," fairness dictates that a defendant's prior waiver of arbitration be

9

nullified and the right to compel arbitration revived. *See Krinsk v. Suntrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (citing *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 113 (2d Cir. 1987)). *See also Cabintree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed."). Where, however, an amended complaint only makes minor changes to the factual allegations or legal claims previously asserted, a defendant's right to arbitrate, if waived, will not be rejuvenated by the filing of the pleading.

In *Krinsk*, for example, we held that the defendant's previously waived right to arbitrate was revived by the filing of an amended class-action complaint that redefined the class, potentially expanding its scope from hundreds to tens of thousands of members. *See* 654 F.3d at 1202–04. Likewise, in *Brown v. E.F. Hutton & Co., Inc.*, 610 F.Supp. 76 (S.D. Fla. 1985), cited with approval in *Krinsk*, the plaintiff-investor's original complaint asserted a federal securities fraud claim and multiple state law claims against the defendant-security broker for damages allegedly stemming from one transaction and sought $50,000 in damages. Three years later, the plaintiff filed an amended complaint, alleging that the mismanagement of the entire

10

account (as opposed to the one transaction) caused over $150,000 in damages. The court found that the amended complaint "significantly broadened the focus of the litigation" by "greatly expand[ing] the factual allegations" made against the defendant and held that as a result the defendant's right to compel arbitration was revived by the filing of the amended pleading. *Id*. at 78. With this framework in mind, we conclude that Southern Farm may move to compel arbitration on the breach-of-contract claim, but that its right to arbitrate the fraud claims was not revived by the filing of the second amended complaint.

The addition of the breach-of-contract claim unexpectedly altered the scope and theory of the case, and fairness dictates Southern Farm be permitted to arbitrate that claim. Admittedly, as the plaintiffs point out, there are several similarities between the breach-of-contract claim and the previously asserted fraud claims, including that all the claims rely on the same alleged misrepresentations and omissions. Notwithstanding those similarities, there are significant differences which have the effect of significantly shifting the litigation and broadening the scope of Southern Farm's potential liability. For example, the damages recoverable under a breach-of-contract claim are different than those recoverable under a fraud theory. Thus, by adding the breach-of-contract claim, PSC is now able to pursue damages that it was previously unable to recover legally. In addition, the two causes of action

11

require different elements of proof. Significantly, a plaintiff must prove scienter to establish fraud, but not to establish breach of a contract. The absence of the scienter element in the plaintiffs' newly asserted contract claim significantly alters the scope of the litigation (and Southern Farm's potential liability) by allowing a jury to hold Southern Farm liable for making the same misrepresentations and omissions supporting the fraud claims without finding that Southern Farm acted with scienter.

In contrast to our ruling on the contract claim, Southern Farm's right to compel arbitration on the fraud claims was not rejuvenated by the filing of the second amended complaint. Southern Farm contends that because the plaintiffs have shifted from a speech-based theory of fraud to a duty-based theory of fraud, the plaintiffs have unexpectedly and significantly altered the scope of litigation. We disagree. The issue of the possible existence of a fiduciary relationship between Southern Farm and PSC and PSC's shareholders, while not explicitly asserted in the prior complaints, arose on several occasions during discovery and prior to trial. For example, the issue of a potential fiduciary relationship between Southern Farm and PSC and PSC's shareholders resulting in duty to disclose material facts was raised during discovery, was the subject of *Daubert* and summary judgment motions, and was preserved for trial in the parties' pretrial statement, where it was listed as an "issue[] of fact that remain[s] to be litigated." R1:111 at 17, 24–25. Therefore, although the plaintiffs

12

chose not to present a fiduciary duty-based theory of fraud at trial, the explicit assertion of the theory in the second amended complaint did not so unexpectedly alter the litigation so as to revive Southern Farm's previously waived right to arbitrate.

Accordingly, we conclude that Southern Farm may move to compel arbitration on the plaintiffs' breach-of-contract claim,[2] but that its right to arbitrate the fraud claims was not rejuvenated by the filing of the second amended complaint.

### III

For the foregoing reasons, we hold that the district court was the appropriate tribunal to  rule on the waiver issue, Southern Farm's right to compel arbitration on the fraud claim was not revived by the filing of the second amended complaint, and Southern Farm may compel arbitration on the breach-of-contract claim.[3]

**AFFIRMED IN PART, REVERSED IN PART,  AND REMANDED.**

---

[2] We find any contention by the plaintiffs that they would be prejudiced by being required to arbitrate the breach-of-contract disingenuous, as PSC attempted to arbitrate the exact same claim.

[3] We are aware that Southern Farm has taken the position that only seeks all-or-nothing relief—i.e., that it would prefer to litigate all the claims asserted against it in the district court than be required to defend itself in two fora. Our ruling does not require Southern Farm to compel arbitration on the breach-of-contract claim; rather it merely affords Southern Farm the opportunity to assert its right to arbitrate that claim should it so choose. If Southern Farm no longer wishes to arbitrate the breach-of-contract claim, it can so inform the district court.