OPINION
STOWERS, Justice.
I. INTRODUCTION
Two credit card holders defaulted on their accounts, and the issuing bank[1] elected to litigate debt-collection actions. After courts entered default judgments against both card holders, the card holders filed new and separate suits alleging that the bank violated the Unfair Trade Practices and Consumer Protection Act (UTPA) during the earlier debt collection actions. The bank moved in each case to arbitrate the UTPA claims, and the superior court stayed the UTPA litigation and ordered arbitration. We must decide whether the bank waived its right to demand arbitration of the subsequent UTPA claims by litigating the debt-collection claims. Because we conclude that the two claims were not sufficiently closely related, we hold that the bank did not waive its right to demand arbitration of the separate UTPA claims. But we also conclude that it was error for the superior court to interpret the arbitration agreement on the question of the availability of statewide injunctive relief: the interpretation of an arbitration agreement is in the first instance a matter for the arbitrator.
II. FACTS AND PROCEEDINGS
A. Hudson v. Citibank
In April 1999 Janet Hudson opened a Citibank credit card account. The original terms of the Card Agreement did not contain an arbitration clause. In 2001 Citibank mailed Hudson a “Change-in-Terms” form along with her periodic statement. The form included an arbitration clause that allowed either party to “elect mandatory, binding arbitration” of “any claim, dispute, or controversy” (Claims). The arbitration clause stated: “All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy ... they seek. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.” The clause continued:
At any time you or we may ask an appropriate court to compel arbitration of Claims, ... even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.
The clause also asserted that “[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.” Finally, the clause stated that “Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis.” Hudson was given the opportunity to opt out of the Change in Terms and did not.
Hudson fell behind on her payments, and in November 2010 Citibank—represented by *45 Alaska Law Offices—filed a collection action in the Kenai District Court seeking the $ 24,-170.24 that Hudson owed. Hudson did not appear in the action, and the court entered a default judgment. Alaska Law Offices moved for attorney's fees under Alaska Rule of Civil Procedure 82, which allows the prevailing party in a default judgment to recover either its reasonable attorney’s fees or 10% of the judgment, whichever is less.[2] Alaska Law Offices requested 10% attorney’s fees, arguing that its actual attorney’s fees for the default judgment were $4,834.05, exactly 20% of the recovery. The court granted Alaska Law Office’s motion and awarded $ 2,417 in attorney’s fees.
In August 2011 Hudson filed a class-action complaint in the superior court, alleging that Citibank, Alaska Law Offices, and Clayton Walker (an attorney at Alaska Law Offices) violated the UTPA by asking the court for attorney’s fees in excess of the “reasonable” fee allowed under Rule 82. Hudson sought damages and prospective injunctive relief under the “private attorney general” provision of the UTPA. Citibank promptly moved to stay the action and to compel arbitration on an individual basis. The superior court granted Citibank’s motion to compel arbitration, but held that Hudson could be awarded statewide injunctive relief by the arbitrator.
B. Stewart v. Midland Funding LLC
Cynthia Stewart opened a Citibank credit card account in 2002 with the same arbitration provision as Hudson’s. Stewart fell behind on her payments, and in December 2010 Midland Funding, which had purchased Stewart’s account from Citibank, initiated an action in Anchorage District Court to collect the debt. Alaska Law Offices represented Midland Funding in the proceeding. The district court entered default judgment against Stewart, who failed to appear. Alaska Law Offices- argued that Midland Funding’s actual attorney’s fees in the case were $-739.04, again 20% of the recovery, and asked for 10% attorney’s fees under Rule 82. The district court awarded the requested fees.
Stewart later filed an action in the superior court alleging that Midland Funding and Alaska Law Offices violated the UTPA by using a contingency fee arrangement as their “reasonable” fees under Rule 82. The defendants moved to stay the action and to compel arbitration. In July 2012, the superior court stayed the action and compelled arbitration “according to the same terms ordered by this court in Hudson v. Citibank.”
C. Petition for Review
Hudson[3] petitioned for review and we granted the petition on three issues: (1) whether Citibank waived its right, to arbitrate the UTPA claims by litigating the debt-collection actions in court; (2) the extent of any waiver; and (3) whether the superior court erred in holding that the arbitrator could issue statewide injunctive relief.
III. STANDARD OF REVIEW
Citibank argues that waiver is a factual issue that should be reviewed deferentially, while Hudson argues that waiver is a mixed question of law and fact that should ultimately be reviewed de novo. There is conflicting Alaska precedent on the issue,[4] but it is clear that the majority of jurisdictions treat arbitration waiver as a mixed question of law and fact.[5] We believe that the *46 mixed question of law and fact standard accurately reflects the nature of the inquiry: the superior court must find the pertinent facts—if they are in dispute—and then correctly apply the law to those facts.
Where the facts are not in dispute on appeal, as here, we must decide whether the superior court applied the correct legal standard to the undisputed facts.[6] On questions of law we are “not bound by the lower court’s decision.”[7] Rather, we apply de novo review, “adopting the rule of law that is ‘most persuasive in light of precedent, reason, and policy.’ ”[8]
IV. DISCUSSION
For the reasons that follow we agree with the superior court that Citibank did not waive its right to arbitrate the UTPA claims by litigating the debt-collection actions, but we hold that the superior court erred when it decided the question whether the arbitrator could issue statewide injunctive relief—this question presents an issue of interpretation of the arbitration agreement that should be decided in the first instance by the arbitrator.
A. Citibank Did Not Waive Its Right To Arbitrate Hudson’s UTPA Claims.
1. Federal law controls waiver by litigation conduct.
As a threshold matter, the parties dispute whether Alaska law or federal law should be applied to determine if Citibank waived its right to demand arbitration.[9] The answer to this question depends on which provision of the Federal Arbitration Act[10] provides the basis for waiver by litigation conduct. Hudson argues that waiver is a defense under § 2 of the Federal Arbitration Act (the savings clause), which calls for the application of state law.[11] Citibank argues that waiver arises under § 3 (the default *47 clause), which calls for the application of federal law.[12]
When it enacted the Federal Arbitration Act, “Congress intended to establish a uniform .federal law over contracts which fall within its scope.”[13] Thus, “if the Arbitration Act is deemed applicable, federal law applies in construing and enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity.”[14] The default clause—§ '3 of the Federal Arbitration Act—^directs a court to stay proceedings and order arbitration so long as the “the applicant for the stay is not in default in proceeding with such arbitration.”[15] If waiver by litigation conduct arises under § 3 of the Arbitration Act, federal law applies.[16] But the savings clause—§ 2 of the Arbitration Act— provides that arbitration agreements “shall be valid, irrevocable, and enforceable, save wpon such grounds as exist at law or in equity for the revocation of any contract.”[17] State law, not federal law, is applicable when a court is considering a defense under § 2 that is grounds for “the revocation of [the] contract.”[18]
Whether waiver by litigation conduct arises under § 2 or § 3- of the Federal Arbitration Act has rarely been explicitly considered by courts. Many federal courts apply federal law while using default and waiver language interchangeably, and state courts generally apply state law while using waiver language only.[19] According to one commentator, “There is general agreement among the circuit courts that the term ‘default’ in Section 3 should, under appropriate circumstances, be read to include waiver of the right to arbitrate by participation in litigation.” [20] In many cases there is little difference between the tests under state and federal law, so the distinction is not usually a crucial one.[21]
We conclude that waiver by litigation conduct is a defense arising under § 3 of the Federal Arbitration Act such that federal law applies. We believe that waiver is not a defense that gives rise to “the revocation of [a] contract” under § 2.[22] Waiver is a defense *48 that may make a contract unenforceable, but it does not traditionally give rise to the right to revoke the contract.[23] As Justice Thomas explained in his concurrence to AT&T Mobility LLC v. Concepcion, “The use of only ‘revocation’ [in § 2’s savings clause] and the conspicuous omission of ‘invalidation’ and ‘nonenforcement’ suggest that the exception does not include all defenses applicable to any contract but rather some subset of those defenses.”[24] Again, waiver is not a defense traditionally included in the “subset” of revocation defenses.[25] Strengthening this position, when the Supreme Court has listed defenses under § 2, it has only listed defenses that are traditionally grounds for the revocation of a contract: fraud, duress, and un-conscionability.[26]
It is true that the Supreme Court has used language that arguably sanctions the use of state law for all defenses to the arbitrability of contracts. For example, in Arthur Andersen LLP v. Carlisle, the Court explained, “ ‘[SJfcate law,’ therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 ‘if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.’ ”[27] But in Arthur Andersen the Court was not interpreting § 2. Instead, it was focused on allowing a non-party beneficiary to a contract to invoke § 3 to enforce the Federal Arbitration Act arbitration clause in an agreement.[28] The remainder of the Court’s analysis focused upon § 3. We think that these statements do not sweep waiver, a defense giving rise to the non-enforcement of a contract provision, into the category of defenses that are grounds for revocation of the contract. Consequently, we hold that waiver arises under § 3 and federal law applies.
There is no uniformly accepted federal rule to determine whether a party seeking arbitration has waived its right to arbitration, but the circuit courts generally consider the following elements: (1) knowledge of the right to compel arbitration; (2) acts inconsistent with that right; and (3) prejudice to the opposing party because of those acts.[29]
*49 The amount of prejudice required varies among the circuits.[30] We generally agree with the Seventh Circuit’s approach set out in St. Mary’s Medical Center of Evansville, Inc. v. Disco Aluminum Products Co. that “where it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party.”[31] We conclude that “a court may consider prejudice to the [party opposing arbitration] as a relevant factor among the circumstances that the court examines in deciding whether the moving party has taken action inconsistent with the agreement to arbitrate.”[32] The essential question is whether, based on the totality of the circumstances, and giving due regard to the strong federal policy favoring arbitration[33] and disfavoring an inference of waiver, the alleged waiving party’s participation in litigation evidences an intention to waive that right or is so inconsistent with the right to arbitrate that it is contrary to any other intention than waiver.
2. Citibank did not waive its right to arbitrate the UTPA claims because the totality of the circumstances does not evidence an intention to waive its right to arbitrate.
In this case Citibank filed a debt-collection suit in state court, and after prevailing it was awarded attorney’s fees; Hudson later filed a separate action based on the alleged unfair trade practices associated with the attorney’s fees award. Citibank then moved to arbitrate Hudson’s separate action.
We conclude that, based on the totality of the circumstances, Citibank’s decision to litigate its debt collection claim and ask for attorney’s fees did not evidence an intent to waive its right to arbitrate the different, more complex UTPA claim. First, it is well accepted that “the law favors arbitration” [34] and “waiver is not to be lightly inferred.”[35] All doubts regarding the occurrence of waiver should be resolved in favor of arbitration.[36] And § 3 of the Federal Arbitration Act provides that if a suit is brought on an issue that is referable to arbitration and one party moves to have the issue arbitrated, the trial court “shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.” [37]
Second, the Arbitration Agreement governing the relationship between the parties allowed either party to “elect mandatory, binding arbitration” of “any claim, dispute, or controversy.” The arbitration clause stated: “All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy ... they seek. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.” The clause continued:
At any time you or we may ask an appropriate court to compel arbitration of Claims, ... even if such Claims are part of *50 a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.
The clause also asserted that “[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.” Finally, the clause stated that “Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis.” The text of the Arbitration Agreement clearly provides that Citibank was authorized under its contract with Hudson to seek arbitration on claims distinct from its original debt collection action and its request for attorney’s fees.[38]
Third, a party may waive its right to arbitrate separate claims, but the claims must be closely related in order for the party’s act in bringing suit on one claim to be inconsistent with the existing right to arbitrate another claim.[39] One circuit has held claims were waived when “basically only one controversy exists between the parties.” [40] And another has held that a party waived arbitration when matters were “so closely related as to form what is really a single controversy” because the claims involved the “same facts and legal issues.”[41] Another way of saying this is that the claims are “intertwined” and that the “fact finder would necessarily have to resolve fact issues common to both.”[42] While being brought in separate actions makes it more likely that two claims are not “intertwined,” the filing of separate actions alone does not make the claims unrelated.[43]
We conclude that Citibank’s decision to litigate its simple debt-collection action does not convey that it also intended to forgo arbitration on a different, more complex UTPA claim. The UTPA claim broadens the scope of the proceeding by such a magnitude that it fundamentally transforms the litigation.[44] The evidence and legal theories includ *51 ed in the two different claims would have little if any overlap.[45] The bank’s claim for recovery of the debt would center on the language of the contract and the breach of the cardholder’s duty to pay, while the cardholder’s UTPA claim would involve attorney’s fees practices, e.g., whether Citibank entered into a contingency fee contract with its collections attorneys and whether a contingency fee is a permissible basis for recovering attorney’s fees under Alaska Civil Rule 82’s default judgment fee provision.[46] The claims did not arise out of the same transaction; one arose from the credit card contract and one arose from the bank’s fee agreement with its lawyers and post-litigation attorney’s fees motions.[47]
Other courts considering similar fact patterns have likewise held that a debt collection proceeding does not waive arbitration of a later consumer-protection claim. A federal district court in Michigan noted that “[n]u-merous courts across the country have found that commencing a separate debt collection lawsuit does not, on its own, waive the right to arbitration.”[48] In Fields v. Howe, a case from the Southern District of Indiana, the court held that “[t]he fact that the present action arose because of Diseover’s allegedly improper conduct in the course of [the debt-collection action] does not render this cause one and the same as Diseover’s state court case.”[49] The court explained, “The state court ease is a collection action—a case initiated by Discover; the federal court case is an action for alleged violation of federal and state laws—a case initiated by Fields.”[50] And in Funderburke v. Midland Funding, L.L.C. a federal district court in Kansas held that a debt-collection action did not waive the right to demand arbitration of a later-filed consumer-protection claim.[51] We agree with these courts.
Hudson relies on Midwest Window Systems, Inc. v. Amcor Industries, Inc.,[52] a case from the Seventh Circuit. In that case, Midwest Window and Amcor agreed that Amcor would make all of its pending deliveries and Midwest Window would issue promissory notes for the pending orders.[53] Unfortunately for Midwest Window, Amcor did not make any of the deliveries but still went to court and received default judgment on the notes.[54] Midwest Window promptly filed a separate action alleging breach of the contract and fraud, which Amcor moved to arbitrate.[55] Midwest Window re-opened the promissory-note case and the court consolidated the two cases.[56] On appeal, the Seventh Circuit held that Aneor’s action to reduce the notes to judgment waived arbitration of the second proceeding—the breach of contract claims. It found that the issues in the breach of contract action and in the debt-collection action *52 were similar enough that “basically only one controversy exists between the parties.”[57]
But Midwest Window is distinguishable. The majority of the claims at issue in that case were breach of contract claims all arising from the same contract. The fraud claims on the notes were mainly incidental to these claims. Thus the issue was whether the two suits—one for payment and one for performance, both on the same contract—were related. The Seventh Circuit reasonably concluded they were related. The two proceedings concerned the “same facts and legal issues”[58] —facts relating to the wording and origination of the contract. Here, however, Hudson does not argue that the underlying contract was fraudulently induced or that she did not owe the debt. The evidence and legal issues central to the two controversies do not overlap. The UTPA proceeding would feature testimony relating to the standard for reasonable attorney’s fees in debt-collection actions, the hours actually worked by Alaska Law Offices, and the general practice of attorneys in similar types of cases. The debt collection proceeding would rely on the credit card agreement and evidence of Hudson’s failure to pay her debts.
We conclude that Citibank’s debt collection claims and Hudson’s UTPA attorney’s fees claims are not sufficiently closely related such that they would be considered only one controversy. Given this conclusion, and giving due regard to the strong federal policy resolving all doubts in favor of arbitration, we also conclude that Citibank’s filing a state court action to recover its debt did not evidence a clear intent to waive its right to arbitrate a subsequent UTPA claim. Therefore, under the totality of the circumstances—particularly given the language of the arbitration provision and the unrelatedness of the two sets of litigation—we hold that Citibank did not waive its right to arbitrate Hudson’s UTPA attorney’s fees claim and affirm this aspect of the superior court’s decision.
B. It Was Error To Hold That The Arbitrator Could Issue Statewide Injunctive Relief.
The superior court concluded, notwithstanding the explicit language of the Arbitration Agreement providing that “the arbitrator may award relief only on an individual (non-class, non-representative) basis,” that under the UTPA Hudson had a non-waivable right to pursue relief on a statewide basis. By drawing a distinction between the right to litigate a claim and the right to pursue a type of relief, the court held that the arbitrator could grant statewide relief.
The Supreme Court has been exceedingly clear' that parties to an arbitration agreement may not be subjected to procedures for which they did not bargain. In Stolb-Nielsen S.A. v. AnimalFeeds International Corp., the Supreme Court decided whether class arbitration was available when the contract was silent on the issue.[59] The Court held that parties may choose the type of arbitration they -wish to employ and with whom they want to arbitrate, and courts must “give effect to the contractual rights and expectations of the parties.”[60] But because the arbitration agreement was silent on the availability of class arbitration in *53 Stolt-Nielsen, the Court held that class arbitration was not available because a “party-may not be compelled under the [Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.”[61] And in AT&T Mobility v. Concepción, the Supreme Court struck down a California rule of decision because it allowed consumers to demand class arbitration even when it was prohibited by their arbitration agreements.[62] The Court held that this violated the central tenant of its arbitration precedent: to “ensur[e] that private arbitration agreements are enforced according to their terns.”[63]
We do not need to decide whether the arbitration agreement in this appeal prohibits statewide injunctive relief. The interpretation of an arbitration agreement is a question for arbitration.[64] For example, in Ferguson v. Corinthian Colleges, the Ninth Circuit concluded that the question whether public injunctive relief could be granted in a student loan controversy was initially a question for the arbitrator.[65] It was error for the superior court to decide that the arbitrator could order statewide injunctive relief. We vacate the court’s decision: on remand the issue of the availability and scope of injunc-tive relief must be referred to arbitration.
V. CONCLUSION
We AFFIRM the superior court’s order staying court proceedings and submitting the dispute to arbitration, but we REVERSE and VACATE the superior court’s ruling that the arbitrator can order statewide injunctive relief, and we REMAND for further proceedings consistent with this opinion.

. In both cases Citibank (South Dakota) NA issued the cards, but in Stewart's case Midland Funding LLC purchased the account from Citibank.

. Alaska R. Civ. P. 82(b)(1), (b)(4).

. For convenience, the parties will be referred to collectively as “Citibank'1 and "Hudson.”

. Compare Airoulofski v. State, 922 P.2d 889, 894 n.5 (Alaska 1996) (holding that waiver should be reviewed de novo when decided without trial on undisputed facts), with Blood v. Kenneth Murray Ins. Co., 68 P.3d 1251, 1254 (Alaska 2003) (holding without elaborating that waiver is an issue of fact),

. See, e.g., La. Stadium & Exposition Dist. v. Merrill Lynch, 626 F.3d 156, 159 (2d Cir. 2010); In re Tyco Int’l Ltd. Sec. Litig., 422 F.3d 41, 44 (1st Cir. 2005) ("A determination that a party has waived its right to arbitrate is reviewed de novo, whereas the district court’s findings of fact are subject to 'clear error’ review.”); Hoover v. Am. Income Life Ins. Co., 206 Cal.App.4th 1193, 142 Cal.Rptr.3d 312, 319 (2012) ("The waiver issue may be reviewed de novo when the question is whether the superior court properly applied the correct legal standard to the undisputed facts.,..”); LAS, Inc. v. Mini-Tankers USA, Inc., 342 Ill.App.3d 997, 277 Ill.Dec. 547, 796 N.E.2d 633, 636 (2003) (holding that because the facts are not in dispute the court should review the *46 arbitration waiver de novo and gathering federal cases holding the same).

. Guttchen v. Gabriel, 49 P.3d 223, 225 (Alaska 2002) (citing Foss Alaska Line, Inc. v. Northland Servs., Inc., 724 P.2d 523, 526 (Alaska 1986)).

. Guin v. Ha, 591 P.2d 1281, 1284 n.6 (Alaska 1979).

. Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist., 204 P.3d 347, 352 (Alaska 2009) (quoting Lexington Mktg. Grp., Inc. v. Gold-belt Eagle, LLC, 157 P.3d 470, 472 (Alaska 2007)).

. Citibank also argues that the arbitrator should decide the question whether a party waived its right to arbitrate by participating in litigation. But if "the waiver turns on the significance of action taken in a judicial forum, 'the issue is one for the court, rather than the arbitrator, to decide.' " Int’l Bhd. of Teamsters Local 959 v. King, 572 P.2d 1168, 1174 (Alaska 1977) (quoting Weight Watchers of Que., Ltd. v. Weight Watchers Int'l, Inc., 398 F.Supp. 1057, 1058-59 (E.D.N.Y. 1975)). This is the majority view among state and federal courts. See River House Dev. Inc. v. Integrus Architecture, P.S., 167 Wash.App. 221, 272 P.3d 289, 295 (2012) ("The weight of both federal authority under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and state authority under the current and former versions of the [Uniform Arbitration Act] treat litigation-conduct waiver as an issue for the court rather than an issue for the arbitrator, despite the U.S. Supreme Court's including waiver in its list of arbitrable procedural issues in Howsam [v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct 588, 154 L.Ed.2d 491 (2002) ]_”); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 3 (1st Cir. 2005) ("The issue of waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court even after the Howsam and Green Tree holdings.”); Perry Homes v. Cull, 258 S.W.3d 580, 587 (Tex. 2008) (noting that every federal circuit to consider the issue after Howsam has held that waiver by litigation conduct is still a decision for the court). Courts have reasoned that "[c]ontracting parties would expect the court to decide whether one party’s conduct before the court waived the right to arbitrate,” Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed.Appx. 462, 464 (5th Cir. 2004), because the court is in a much better position to decide whether conduct in its own courtroom amounted to waiver. See Peny Homes, 258 S.W.3d at 588.

. 9 U.S.C. §§ 1-14(2012).

. 9 U.S.C. § 2 (“A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added)).

. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in.such suit or proceeding is referable to _arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." (emphasis added)).

. Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir. 1984).

. Id.

. See 9 U.S.C. § 3 (emphasis added).

. Under § 3, the court must apply federal law because “if the Arbitration Act is deemed applicable, federal law applies in construing and enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity.” Goodwin, 730 F.2d at 108.

. 9 U.S.C. § 2 (emphasis added).

. Perry v. Thomas, 482 U.S. 483, 492-93, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); 9 U.S.C. § 2.

. See, e.g., Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 13 (1st Cir. 2005) ("A ‘default’ has generally been viewed by courts as including a ‘waiver.’ ”); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 218 (3d Cir. 2007) (holding that waiver and default are synonymous); Thompson v. Skipper Real Estate Co., 729 So.2d 287, 290-93 (Ala. 1999) (discussing waiver under state law but not default); Kirk v. Credit Acceptance Corp., 346 Wis.2d 635, 829 N.W.2d 522, 532-34 (2013) (same); Townsend v. Quadrant Corp., 173 Wash.2d 451, 268 P.3d 917, 922-23 (2012) (same); Saint Agnes Med. Ctr. v. PacifiCare of Cal, 31 Cal.4th 1187, 8 Cal.Rptr.3d 517, 82 P.3d 727, 737 (2003) (same).

. Thomas J. Lilly, Jr., Participation in Litigation as a Waiver of the Contractual Right to Arbitrate: Toward a Unified Theory, 92 Neb. L. Rev. 86, 100 (2013) (citing Ehleiter, 482 F.3d at 217; Marie, 402 F.3d at 14; Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004)); see, e.g., S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) ("Our determination of whether S & H waived its right to arbitration, as opposed to whether the contract is void under Alabama law, is controlled solely by federal law.”).

. See, e.g., Townsend, 268 P.3d at 922-23; Saint Agnes Med. Ctr., 8 Cal.Rptr.3d 517, 82 P.3d at 737.

. 9 U.S.C. § 2.

. 13 R. Lord, Williston On Contracts § 39:14, at 612-13 (4th ed. 2012) ("[E]ither party to a contract may waive virtually any contractual provision or right in its favor-”); id. § 39:27, at 678 (“Waiver of a contract provision may be made by a party's express declaration, or it may be implied from representations that fall short of an express declaration of waiver....” (emphasis added)).

. 563 U.S. 333, 354, 131 S.Ct. 1740, 179 L,Ed.2d 742 (2011) (Thomas, J., concurring).

. Compare 13 R. Lord, Williston On Contracts § 39:15, at 622 (4th ed. 2012) ("[Ojnce it has been established that a right has been waived, the party possessing the right prior to the waiver is generally precluded from asserting it in a court of law, particularly when the nonwaiving party has suffered prejudice or has relied to its detriment on the waiver." (footnotes omitted)), with 27 id. § 70:106, at 530 (“A contract may be rescinded where there is a clear, bona fide, mutual mistake regarding a material fact or law.”).

. Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681,687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("[Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2_”).

. 556 U.S. 624, 629-31, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (quoting Perry v. Thomas, 482 U.S. 483, 493 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)).

. Id.

. E.g., ABF Freight Sys., Inc. v. Int’l Bhd. of Teamsters, 728 F.3d 853, 862 (8th Cir. 2013) (citing Wootten v. Fisher Invs., Inc., 688 F.3d 487, 492-93 (8th Cir. 2012)); Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002) (citing Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990)). Some courts consider a variety of nonexclusive factors related to these elements in determining whether the right to arbitration has been waived. E.g., Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012); In re Pharmacy Benefit Managers Antitrust Litig., 700 F.3d 109, 117 (3d Cir. 2012) (quoting Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 451 (3d Cir. 2011); Nino v. Jewelry Exch., Inc., 609 F.3d 191, 208 (3d. Cir. 2010)); Hill v. Ricoh Ams. Corp., 603 F.3d 766, 772-73 (10th Cir. 2010) (quoting Peterson v, Shearson/Am. Express, 849 F.2d 464, 467-68 (10th Cir. 1988)); Khan v. Parsons Global Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting Nat'l Found, for Cancer Research v. A.G. Edwards & Sons, 821 F.2d 772, 774-75 (D.C. Cir. 1987)); In re Crysen/Montenay Energy Co., 226 F.3d 160, 163 (2d Cir. 2000); PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997); Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995).

. Compare Sovak, 280 F.3d at 1270 (noting in Ninth Circuit party has “heavy burden” in showing prejudice (quoting Britton, 916 F.2d at 1412)), with In re Tyco Int’l Ltd. Sec. Litig., 422 F.3d 41, 44-45 (1st Cir. 2005) (noting First Circuit requires party to demonstrate "modicum of prejudice" (quoting Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003))).

. 969F.2d585, 590 (7th Cir. 1992).

. Nat'l Found, for Cancer Research, 821 F.2d at 777.

. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); see also Am. Express Co. v. Italian Colors Rest., — U.S. —, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013).

. Blood v. Kenneth Murray Ins., Inc., 68 P.3d 1251, 1255 (Alaska 2003) (citing Bd. of Educ., Fairbanks N. Star Borough Sch. Dist. v. Ewig, 609 P.2d 10, 13 (Alaska 1980)); Midwest Window Sys., Inc. v. Amcor Indus., Inc., 630 F.2d 535, 536 (7th Cir. 1980).

. Blood, 68 P.3d at 1255 (citing S & R Co. of Kingston v. Latona Trucking, Inc., 159 F,3d 80, 83 (2d Cir. 1988)).

. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Blood, 68 P.3d at 1255 (citing Doctor’s Assocs. Inc. v. Distajo, 107 F.3d 126, 130 (2d Cir. 1997)).

. 9 U.S.C. § 3 (2012) (emphasis added).

. We disagree with the dissent’s analysis about what would have happened had Hudson actually raised a UTPA counterclaim in the collection litigation. If Hudson had raised the UTPA simply to defend and reduce the Rule 82 award, Citibank may have been locked in to the superior court litigation. But if Hudson had raised the UTPA to assert an affirmative counterclaim of some kind, Citibank would have had every right under the arbitration provision to demand arbitration of that counterclaim, regardless of its connection to the Rule 82 claim. Under the dissent's analysis, Hudson avoids the plain language of the arbitration provision to which she agreed simply by defaulting in the first lawsuit and waiting to assert her counterclaim in a separate lawsuit. That cannot be the correct result.

. See Midwest Window Sys., Inc., 630 F.2d at 537; PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 110 (2d Cir. 1997); see also Gutor Int'l AG v. Raymond Packer Co., 493 F.2d 938, 946 (1st Cir. 1974) (holding that "[a]ll related matters” must be arbitrated); G.T. Leach Builders, LLC v. TCMS, Inc., No. 13-11-310 CV, 2012 WL 506568, at *3-5 (Tex. App. Feb. 16, 2012) (applying federal law and finding waiver when the two claims were based on the same contract).

. Midwest Window Sys., Inc., 630 F.2d at 537 (holding claims waived because they all "[grew] out of their unsatisfactory business relationship”).

. PPG Indus., Inc., 128 F.3d at 110.

. Owens & Minor Med., Inc. v. Innovative Mktg. & Distrib. Servs., 711 So.2d 176, 177 (Fla. Dist. App. 1998).

. See Midwest Window Sys., Inc., 630 F.2d at 536-37 (holding that fraudulent collection on promissory note was reasonably related to breach of contract claim); Blackburn v. Citifinancial, Inc., No. 05AP-733, 2007 WL 927222, at *5 (Ohio App. Mar. 29, 2007) (holding that debt-collection action was closely related to fraud in origination of the loan); G.T. Leach Builders, LLC, 2012 WL 506568, at *3-5 (holding that claims in two separate lawsuits—one for breach of contract and one for payment—were reasonably related).

. See Plaintiff's Shareholders Corp. v. Southern Farm Bureau Life Ins. Co., 486 Fed.Appx. 786, 790 (11th Cir. 2012) ("Nonetheless, where a plaintiff files an amended complaint that ‘unexpectedly changes the scope or theory of the plaintiff's claims,’ fairness dictates that a defendant's prior waiver of arbitration be nullified and the right to compel arbitration revived.” (quoting Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011))); Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) ("The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvi *51 ous that the party should be relieved from its waiver and arbitration allowed to proceed.").

. See PPG Indus., Inc., 128 F.3d at 110 (holding that the claims must be "so closely related as to form what is really a single controversy” and share the "same facts and legal issues").

. The essence of Hudson’s UTPA claim is that Citibank’s attorneys performed relatively little work to obtain a default judgment on a simple debt action, yet because the attorneys were being compensated under a 20% contingency fee agreement, the attorney’s fees requested and awarded under Rule 82(b)(1) were disproportionately higher than the hourly fee they would have charged, making them unreasonable. Hudson alleges this attorney’s fee practice violates the UTPA.

. Cf. Midwest Window Sys., Inc., 630 F.2d at 537 (finding waiver for two disputes—one for payment and one for performance—that grew out of the same contract); G.T. Leach Builders, LLC, 2012 WL 506568, at *4 (same).

. Garcia v. Weltman, Weinberg & Reis Co. of Mich., No. 2:13-CV-14362, 2014 WL 1746522, at *5-6 (E.D. Mich. Apr. 30, 2014).

. No. IP-01-1036-C-B/S, 2002 WL 418011, at *7-8 (S.D. Ind. Mar. 14, 2002).

. Id.

. No. 12-2221-JAR/DJW, 2013 WL 394198, at *7-8 (D. Kan. Feb. 1, 2013).

. 630 F.2d 535 (7th Cir. 1980).

. Id. at 535-36.

. Id.

. Id.

. Id.

. Id. at 537.

. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 110 (2d Cir. 1997). Hudson points to another case from the Ohio Court of Appeals where an elderly woman was fraudulently convinced to sign a mortgage and loan secured by her house. See Blackburn v. Citifinancial, Inc., No. 05AP-733, 2007 WL 927222, at *4 (Ohio App. Mar. 29, 2007). Citifinancial instituted a foreclosure action in court and sought judgment on the underlying promissory note, which was covered by an arbitration agreement. The suit was dismissed as premature, and the plaintiffs filed suit against Citifinancial alleging fraud in the origination of the loan. Citifinancial immediately moved to stay the proceedings and compel arbitration, but the court held that it had waived the right to arbitrate by litigating the foreclosure. Blackburn is distinguishable because the claims were more closely related. The same evidence would have been relevant to both claims—the origination of the note and the specifics of the contract.

. 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).

. Id. at 682-83, 130 S.Ct. 1758 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).)

. Id. at 684, 130 S.Ct. 1758.

. 563 U.S. 333, 131 S.Ct. 1740, 1756, 179 L.Ed.2d 742 (2011).

. Id. at 1748 (alteration in original) (quoting Volt, 489 U.S. at 478, 109 S.Ct. 1248).

. See Johnson v. Aleut Corp., 307 P.3d 942, 949 (Alaska 2013); Ahtna, Inc. v. Ebasco Constructors, Inc., 894 P.2d 657, 662 (Alaska 1995).

.733 F.3d 928, 937 (9th Cir. 2013).