[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11912

_____

D.C. Docket No. 8:09-cv-00909-JDW-EAJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2011
JOHN LEY
CLERK

SARA E. KRINSK,
on behalf of herself and all others
similarly situated,

Plaintiff - Appellee,

versus

SUNTRUST BANKS, INC., et al.,

Defendants,

SUNTRUST BANK,
a Georgia Banking Corporation,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 7, 2011)

Before TJOFLAT, CARNES and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Defendant SunTrust Bank ("SunTrust") appeals the district court's order denying its motion to compel plaintiff Sara Krinsk to submit her claims to arbitration pursuant to an arbitration agreement governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. The district court held that SunTrust had, by participating in the litigation for nine months prior to requesting that the case be submitted to arbitration, waived its contractual right to compel arbitration. In its appeal, SunTrust argues that Krinsk's submission of an amended complaint revived its right to compel arbitration, notwithstanding its previous waiver of that right. We find merit in SunTrust's argument and therefore vacate the order and remand to the district court for further proceedings.

I.

A.

In December 2006, Krinsk applied for and obtained from SunTrust a home-equity loan that allowed her to draw from a $500,000 home-equity line of credit ("HELOC") collateralized by Krinsk's $1.6 million Sarasota, Florida home. In securing the loan, Krinsk executed SunTrust's standard-form loan agreement, known as an "Access 3 Equity Line Account Agreement and Disclosure

Statement" (the "Loan Agreement").  Among the Loan Agreement's terms is an arbitration clause requiring Krinsk and SunTrust to resolve all disputes through binding arbitration whenever either party elects arbitration and provides the other party with written notice of the election to arbitrate.  Such notice of election "may be given after a lawsuit has been filed and/or in papers filed in the lawsuit."  If a party elects to submit the dispute to arbitration, the Loan Agreement precludes resolution of the claims by class action.[1]

B.

In October 2008, SunTrust unilaterally suspended Krinsk's right to access $400,000 of her HELOC.  SunTrust earlier had mailed Krinsk a letter requesting that she provide SunTrust with updated financial information; SunTrust contends that its decision to suspend Krinsk's HELOC was based on the information she subsequently provided in response to that request.  Indeed, SunTrust informed Krinsk by letter that it was suspending her HELOC access due to "reasonable concern that [she would] be unable to fulfill [her] financial payment obligations

---

[1] The Loan Agreement provides in pertinent part:

5.  NO CLASS ACTIONS, ETC. . . . if you or we elect to arbitrate a claim, neither you nor we will have the right: (a) to participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; or (b) to join or consolidate Claims with claims of any person other than you.  No arbitrator shall have authority to conduct any arbitration in violation of this provision.

3

with [SunTrust] under [her] credit line account because of a material change in [her] financial circumstances."[2]

Krinsk alleges that SunTrust's justification for suspending her account was pretextual. She claims that SunTrust suspended her HELOC, as well as those of other Florida homeowners who had obtained HELOCs from SunTrust around the same time, as part of a scheme SunTrust concocted to restore its capital reserves, which had become depleted in the Fall of 2008. According to Krinsk, HELOCs like hers—those sold to Florida residents between the late 1990s and early 2008 and secured by Florida real property—were among the highest-rated risk elements in SunTrust's debt portfolio, and SunTrust, recognizing that it had a significant concentration of credit risk arising from these loans, aimed to systematically liquidate the loans' available credit balances. To do that, SunTrust mailed letters, like Krinsk received, requesting that HELOC customers provide SunTrust with updated financial information. This, Krinsk posits, provided SunTrust with a means to assert contrived justifications for suspending customers' access to their HELOCs—i.e., under the guise of conducting reviews of customers' financial

---

[2] SunTrust's letter claimed that the suspension decision was based on a report issued by Equifax, a credit reporting agency, and added that Krinsk could obtain a copy of her credit report directly from Equifax. The letter also informed Krinsk that she could request reinstatement of her borrowing privileges if she were to provide additional financial documentation requested.

positions. The most vulnerable targets of SunTrust's scheme, adds Krinsk, who is 92-years-old, were elderly HELOC borrowers, from whom SunTrust anticipated little resistance.

C.

Based on the foregoing allegations, Krinsk, on May 15, 2009, filed a class-action complaint (the "Original Complaint") against SunTrust—as well as SunTrust's corporate parent, SunTrust Banks, Inc. ("SBI"),[3] and SunTrust and SBI's President and Chief Executive Officer James M. Wells III. The Original Complaint stated claims for: (1) financial elder abuse under Florida's Adult Protective Services Act, § 415.101; (2) breach of contract; (3) deceit; (4) negligent misrepresentation; (5) breach of fiduciary duty;[4] (6) violation of Regulation Z of the Truth in Lending Act ("TILA"), 12 C.F.R. § 226.5b(f); and (7) breach of the implied covenant of good faith and fair dealing. It also requested declaratory relief concerning Krinsk's right to access her HELOC.

The Original Complaint defined the proposed class as:

all Florida permanent or part-time residents that entered into an agreement with SunTrust entitled "Access 3 Equity Line Account Agreement and Disclosure" and who, after attaining the age of sixty-

---

[3] SunTrust is a wholly owned subsidiary of SunTrust Bank Holding Company, which is a wholly owned subsidiary of SBI.

[4] The claim for breach of fiduciary duty was asserted against SunTrust only.

five (65), received a letter from SunTrust between July 1, 2008 and October 16, 2008, requesting updated financial information . . . and who were subsequently informed their collateralized credit line had been suspended or reduced during the draw period for purportedly failing to provide the information requested by SunTrust.

Krinsk reasonably estimated, in a later motion for class certification,[5] that this class would "consist[] of <u>hundreds</u> of members located throughout Florida." Pl.'s Mot. for Class Certification and Mem. of Law in Supp. 7–8, Aug. 13, 2009 (emphasis added).

On July 6, 2009, SunTrust responded to the Original Complaint by filing, in lieu of an answer, a motion to dismiss, challenging the sufficiency of each of Krinsk's causes of action; SBI and Wells filed a joint motion to dismiss the following day. SunTrust's motion made no mention of the Loan Agreement's arbitration clause.

The district court did not rule on the motions to dismiss for over six months, and, in the meantime, the litigation proceeded. On August 10, 2009, for instance, SunTrust and Krinsk jointly filed a Case Management Report in which (1) SunTrust expressly stated that it opposed arbitrating the claims asserted against

---

[5] Krinsk's motion for class certification, under Fed. R. Civ. P. 23(c)(1), was filed on August 13, 2009.

it in the Original Complaint; (2) SunTrust laid out its discovery plan;[6] and (3) the parties agreed on a proposed discovery deadline, a proposed dispositive motion deadline, on a final pretrial conference date "on or after April 11, 2011 and for trial on or after May 16, 2011." Moreover, following Krinsk's August 13, 2009 motion to certify the class defined in the Original Complaint, SunTrust levied a vigorous defense against and opposition to class certification and class discovery.[7] Throughout this time, SunTrust did not assert its right to compel arbitration under the Loan Agreement or otherwise indicate its intent to do so.

The district court finally ruled on the motions to dismiss on January 8, 2010, granting SunTrust's motion in part[8] and dismissing all of Krinsk's claims against SBI and Wells. The court also gave Krinsk twenty days' leave to amend the Original Complaint in light of its order. Subsequently, on January 28, Krinsk filed an amended complaint (the "Amended Complaint"), which asserted revised, but mostly similar, claims against SunTrust only—for (1) breach of contract; (2)

---

[6] The discovery plan covered interrogatories, requests for admissions, production requests, expert witness disclosures, depositions, and the handling of confidential information.

[7] For example, on September 9, 2009, SunTrust filed an opposition to Krinsk's August 13, 2009 motion for class certification, and, from November to December 2009, SunTrust filed four separate motions for protective orders related to Krinsk's requests for class-wide discovery.

[8] The court preserved Krinsk's claims against SunTrust for breach of contract and breach of implied covenant of good faith and fair dealing, and her request for declaratory relief. All other claims against SunTrust were dismissed without prejudice.

violation of Regulation Z of TILA; and (3) breach of the implied covenant of good faith and fair dealing.[9]

Because the district court had yet to rule on Krinsk's motion for class certification, the Amended Complaint also offered a new definition for the proposed class, now defining the class as:

> All Florida residents who entered into one or more agreements for a . . . [HELOC] with SunTrust Bank pursuant to its "Access 3 Equity Line Account Agreement and Disclosure" that was collateralized by real estate located in Florida, and who had the available balance of their HELOC suspended or reduced anytime between January 1, 2007 to the date of class certification (the "Class Period").

This new definition—now encompassing Florida residents of <u>any</u> age whose HELOCs SunTrust had suspended for <u>any</u> reason during a <u>three-year</u> class period—greatly enlarged the potential size of the putative class. Indeed, Krinsk later estimated, in an amended motion for class certification filed on March 11, 2010, the number of class members to be in the thousands—if not the tens of thousands. See Pl.'s Am. Mot. for Class Certification and Mem. of Law in Supp. at 7–8, Mar. 11, 2010 (estimating numerosity of amended class definition based on "SunTrust's own records" which "show that <u>at least</u> 56,758 Access 3 HELOCs

---

[9] Krinsk also again sought declaratory relief concerning her right to access her HELOC funds.

issued to residents of Florida and secured by real property located in Florida were suspended or reduced by SunTrust during the Class Period").

SunTrust promptly answered the Amended Complaint on February 10, 2010. In its answer, SunTrust raised its right to arbitration for the first time since the litigation began, asserting, as an affirmative defense, that the Loan Agreement's arbitration clause barred Krinsk from pursuing her action in court and demanding arbitration of her claims. SunTrust also filed, along with its answer, (1) a motion, under the FAA,[10] to compel arbitration, 9 U.S.C. § 4,[11] and to stay the action pending arbitration, id. § 3,[12] and (2) a motion to prohibit maintenance of a class action pursuant to the terms of the Loan Agreement.

---

[10] There is no dispute that the Loan Agreement "evidenc[es] a transaction involving commerce" and is therefore within the scope of the FAA, 9 U.S.C. § 2.

[11] 9 U.S.C. § 4 states in pertinent part, "A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

[12] 9 U.S.C. § 3 states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Krinsk opposed those motions, claiming that SunTrust had waived its contractual right to compel arbitration.[13]

D.

The district court, in an order issued March 26, 2010, denied SunTrust's motion to compel arbitration, agreeing with Krinsk that SunTrust had waived its right to require arbitration of the claims she asserted in the Amended Complaint.[14]

Although arbitration agreements governed by the FAA are to be liberally enforced, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983),[15] courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so, see

---

[13] In her memorandum in opposition to SunTrust's motion to compel arbitration, Krinsk also claimed that the Loan Agreement's arbitration and class-action-waiver clauses were unconscionable.

[14] Because the district court held that SunTrust had waived its right to compel arbitration, it did not address Krinsk's claim that the Loan Agreement's arbitration and class-action-waiver clauses were unconscionable. That issue, consequently, is not presented on appeal.

[15] "[T]he Supreme Court has commanded that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)). The Court has based this stance on Section 2 of the FAA, 9 U.S.C. § 2, which declares "that a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Moses H. Cone, 460 U.S. at 24, 103 S. Ct. at 941 (alteration in original) (quoting 9 U.S.C. § 2).

Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1365 (11th Cir. 1995) ("Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right."); see also Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 407 (5th Cir. 1971) (explaining that an arbitration agreement, "just like any other contract . . . , may be waived").[16] To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test: "First, [they] decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, [they] look to see whether, by doing so, that party 'has in some way prejudiced the other party.'" Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)).[17]

Here, the district court found both prongs of the waiver test satisfied in denying SunTrust's motion to compel arbitration. First, the court determined that

---

[16] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[17] Because federal policy strongly favors arbitration, the party who argues waiver "bears a heavy burden of proof" under this two-part test. Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam) (quoting Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir. 1982), overruled on other grounds by Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)) (internal quotation mark omitted).

11

SunTrust had acted inconsistently with its right to arbitrate Krinsk's claims through its participation in the litigation up until the filing of its answer and motion to compel arbitration. "[A] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate," S & H Contractors, 906 F.2d at 1514 (quoting E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th Cir. 1977)) (internal quotation mark omitted), if that conduct manifests the party's intent to waive arbitration, see Morewitz, 62 F.3d at 1366 ("Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate."). In this case, the district court concluded that SunTrust had, for nine months prior to filing its answer and motion to compel arbitration, "invoked the judicial process in litigating this case without any indication that it was contemplating arbitration." Order 6, Mar. 26, 2010. Although "a defendant may test the sufficiency of a complaint without waiving [the defendant's] right to arbitration," the court ruled, "SunTrust did much more than that." Id. at 7 (citing Wilson v. Par Builders II, Inc., 879 F. Supp. 1187, 1189 (M.D. Fla. 1995)). In particular, the court focused on SunTrust's express opposition to arbitration in the August 10, 2009 Case Management Report and SunTrust's significant motions practice in opposition to

12

Krinsk's request for class certification and class discovery. These actions, the court determined, displayed SunTrust's consent to the case's proceeding in court.

Additionally, the district court decided that, due to SunTrust's actions, Krinsk would suffer prejudice were SunTrust permitted to assert its arbitration rights in such an untimely manner. In determining whether the party opposing arbitration has been prejudiced, courts "consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." S & H Contractors, 906 F.2d at 1514. Here, the district court concluded that SunTrust's election of arbitration was untimely because "SunTrust's right to elect arbitration accrued at least as early as the filing of the [original] complaint," and yet, SunTrust had permitted nearly nine months to pass before it first asserted its right to have the dispute arbitrated. Order 7, Mar. 26, 2010. This "belated election to arbitrate," the court held, prejudiced Krinsk by inducing her to expend on class-related motion practice and discovery—"the type of litigation expense[s] that arbitration was designed to alleviate"—in reasonable reliance on her expectation that SunTrust would not arbitrate her claims.[18] Order 6–7, Mar. 26, 2010; see also Morewitz, 62 F.3d at 1366 (explaining that prejudice

---

[18] For example, the court highlighted that Krinsk was required to respond to SunTrust's opposition to certification of her original proposed class, which resulted in Krinsk having to file multiple motions to compel discovery.

is generally found "in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate"). That Krinsk had filed the Amended Complaint, the court added, was "immaterial" to its assessment, since the claims she raised in both complaints were "based on the same operative facts," i.e., SunTrust's allegedly improper scheme to suspend HELOCs secured by Florida real property. Order 7 n.5, Mar. 26, 2010.

SunTrust now appeals the order denying its motion to compel arbitration and to stay the action. Although the order is an interlocutory ruling, SunTrust may appeal it under 9 U.S.C. § 16(a)(1)(A), (B).[19]

## II.

In its brief on appeal, SunTrust argues that the district court erred in concluding that the Amended Complaint was immaterial to whether SunTrust had waived its right to compel arbitration.[20] Specifically, SunTrust contends that, even if its invocation of the judicial process operated to waive its right to arbitrate the claims in the Original Complaint, the Amended Complaint "rejuvenated" or

---

[19] We have jurisdiction under 28 U.S.C. § 1292(a)(1).

[20] We review this legal conclusion by the district court de novo. See, e.g., Ivax Corp., 286 F.3d at 1316 (declaring that the district court's legal conclusion that the defendant waived its right to compel arbitration through the party's participation in the litigation process is subject to de novo review).

14

revived its right to compel arbitration. Whether SunTrust's position is correct presents an issue of first impression for this court. The decisions of other federal courts that have considered the issue are informative and persuasive. They have held that, in limited circumstances, fairness dictates that a waiver of arbitration be nullified by the filing of an amended complaint. We conclude that this case presents one of those limited circumstances, and that SunTrust's right to compel arbitration is therefore revived.

Although, under the Federal Rules of Civil Procedure, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case," Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007), the filing of an amended complaint does not automatically revive all defenses or objections that the defendant may have waived in response to the initial complaint. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."). However, the defendant will be allowed to plead anew in response to an amended complaint, as if it were the initial complaint, when the "amended complaint . . . changes the theory or scope of the case." Brown v. E.F. Hutton & Co., 610 F. Supp. 76, 78 (S.D. Fla.

15

1985) (citing Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons Co., 50 F.R.D. 415 (D. Del. 1970)).  It simply would be unfair to allow the plaintiff to change the scope of the case without granting the defendant an opportunity to respond anew.  Id.

Likewise, a defendant's waiver of the right to compel arbitration is not automatically nullified by the plaintiff's filing of an amended complaint.  See, e.g., Gilmore v. Shearson/Am. Express Inc., 811 F.2d 108, 112 (2d Cir. 1987) ("[A] motion to compel arbitration of a claim involves the core issue of a party's willingness to submit a dispute to judicial resolution and, if waived, is not automatically revived by the submission of an amended complaint."), overruled on other grounds by McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co., 849 F.2d 761 (2d Cir. 1988).  Rather, courts will permit the defendant to rescind his earlier waiver, and revive his right to compel arbitration, only if it is shown that the amended complaint unexpectedly changes the scope or theory of the plaintiff's claims.  Id. at 113 (citing Brown, 610 F. Supp. at 78); Envirex, Inc. V. K.H. Schussler für Umwelttechnik GmbH, 832 F. Supp 1293, 1296 (E.D. Wis. 1993) (finding that an amended complaint that "made major . . . changes to [the plaintiff's] original complaint, altering and adding to the issues to be determined at trial," revived the defendants' right to demand arbitration); Brown, 610 F. Supp. at

16

78–79 (reviving the defendant's right to compel arbitration where the amended complaint "materially alter[ed] the situation" by "significantly broaden[ing] the focus of the litigation").

The invocation of the judicial process ordinarily establishes a waiver of the defendant's right to compel arbitration—i.e., such conduct shows, in the normal case, that the defendant intends to elect a judicial forum rather than an arbitral tribunal. See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995) ("[I]nvoking judicial process is presumptive waiver." (emphasis omitted)); see also Iowa Grain Co. v. Brown, 171 F.3d 504, 509 (7th Cir. 1999) (discussing Cabinetree). However, when a plaintiff files an amended pleading that unexpectedly changes the shape of the case, the case may be "so alter[ed] . . . that the [defendant] should be relieved from its waiver." Cabinetree, 50 F.3d at 391. The district court should then "permit a [defendant's] previous waiver to be rescinded." Id. (citing Gilmore, 811 F.2d at 113; Envirex, 832 F. Supp at 1296). In such a case, pursuant to the strong federal policy supporting the enforcement of arbitration agreements, the defendant's motion to compel arbitration should be granted absent a new waiver by the defendant based on the defendant's lack of diligence in seeking arbitration following the filing of the amended complaint. See, e.g., Envirex, 832 F. Supp. at 1296 (highlighting that

17

"[t]he defendants promptly responded to the . . . amended complaint" with their motion to compel arbitration).

In contrast, however, the defendant's prior waiver should not be nullified, and there should be no revival of the arbitration right, when the plaintiff has filed an amended complaint that does not unexpectedly expand the litigation's scope. For example, courts have refused to revive the right to compel arbitration where the amended complaint has made only minor factual changes. See, e.g., Gilmore, 811 F.2d at 113–14 (finding no revival of arbitration right where only minor factual changes were made that did not alter the scope or theory of plaintiff's claim); see also Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc., 398 F. Supp. 1057, 1060 (E.D.N.Y. 1975) (denying defendant's motion to compel arbitration, although plaintiff had filed an amended complaint, because the amended complaint only "restate[d], in . . . a clearer and more orderly fashion, the claims arising out of the matters already pleaded and dealt with in [a] summary judgment motion").

Here, the Amended Complaint is clearly not like the amended complaints in these latter cases. Although, as the district court concluded, the Amended Complaint does merely assert new claims based on the same operative facts as the claims in the Original Complaint, the Amended Complaint is by no means

18

"immaterial."  That conclusion flatly ignored the significance of the new class definition in the Amended Complaint, which greatly broadened the potential scope of this litigation by opening the door to thousands—if not tens of thousands—of new class plaintiffs not contemplated in the original class definition by discarding the old definition's limits on the class plaintiffs' age and on the bases for their HELOC suspensions,[21] and by expanding the class period from over three months to over three years.

This vast augmentation of the putative class so altered the shape of litigation that, despite its prior invocations of the judicial process, SunTrust should have been allowed to rescind its waiver of its right to arbitration.  SunTrust's acts in furtherance of the litigation all occurred prior to the filing of the Amended Complaint and thus concerned the class contemplated in the Original Complaint; SunTrust proceeded in court on the expectation that, if the class action were certified, it would defend itself against only the relatively small plaintiff class defined in the Original Complaint.  SunTrust could not have foreseen that Krinsk would expand the putative class in such a broad way nine months into the

---

[21]  As SunTrust points out in its brief on appeal, the language of the amended class definition presumably opens the door to allow in class members whose HELOC rights were suspended for, among other things, "monetary defaults, for failing to provide updated financial information, for a material change in financial circumstances, or for a significant decline in the appraised value of the collateral property over [the] three and a half year plus [class period]."

litigation. Given this unforeseen alteration in the shape of the case, SunTrust, in plain fairness, should have been allowed to rescind its earlier waiver through its prompt motion to compel arbitration.[22]

In sum, having found that SunTrust's right to compel arbitration, even if waived with respect to the claims in the Original Complaint, was revived by Krinsk's filing of the Amended Complaint, we VACATE the district court's order denying SunTrust's motion to compel arbitration and stay the proceedings and REMAND for further proceedings consistent herewith.[23]

SO ORDERED.

---

[22] The only action that SunTrust took after the Amended Complaint was filed was to submit its answer and its motion to compel arbitration thirteen days later. Thus, in no way did SunTrust act in a manner inconsistent with its right to elect arbitration following the filing of the Amended Complaint.

[23] We are mindful that the district court, on remand, must resolve Krinsk's claim that the Loan Agreement's arbitration and class-action-waiver clauses are unconscionable.