# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1231

_____

Lackie Drug Store, Inc., on behalf of itself and Arkansans similarly situated

*Plaintiff - Appellee*

v.

OptumRx, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 14, 2025
Filed: July 16, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Lackie Drug Store brought this putative class action against several pharmacy benefit managers, including OptumRx. After more than two years of litigation, Lackie amended its complaint, and OptumRx moved to compel arbitration. The district court denied the motion, reasoning that Lackie's claims were not subject to arbitration. OptumRx appeals, challenging that denial. Having jurisdiction under 9 U.S.C. § 16(a)(1)(B), we affirm in part and reverse in part.

I.

OptumRx is a pharmacy benefits manager (PBM), contracting with health insurance plans to manage prescription drug benefits for the plans' members. Plan members can fill their prescriptions at various pharmacies, and those pharmacies will be reimbursed by the customers' health plans through OptumRx.

The pharmacies do not contract with OptumRx directly, however; instead, a collective bargaining group serves as a contracting agent on behalf of its member pharmacies. Elevate Provider Network[1] is such an organization which, as relevant here, negotiated and executed an agreement with OptumRx. Thus, Elevate's member pharmacies could seek reimbursement through OptumRx for prescriptions filled to customers whose health insurance plans contracted with OptumRx.

The agreement between Elevate and OptumRx comprised two documents: the Provider Network Agreement and the Provider Manual. The Network Agreement brings Elevate's members into OptumRx's network and, among other things, outlines the general relationship between Elevate and OptumRx and the procedure for member pharmacies to seek reimbursement. Incorporated by reference into the Network Agreement is the second document, the Provider Manual. The Provider Manual, which OptumRx drafted, outlines how pharmacies submit reimbursement claims and how OptumRx would, in turn, fulfill those claims. In particular, the Provider Manual lays out how OptumRx will determine rates at which it will reimburse any claims. Put simply, OptumRx will choose the lowest of four set rates, one of which is OptumRx's Maximum Allowable Cost (MAC). OptumRx, like other PBMs, maintains a list of its MAC for each generic drug that can be prescribed through its system. This MAC list is proprietary and is not shared with pharmacies except as required by law. Lackie, which operates a pharmacy in Arkansas, believes OptumRx and other PBMs failed to disclose, update, and notify it and other pharmacies of changes to their respective MAC lists in violation of several Arkansas

---

[1]Elevate was formerly known as Good Neighbor Pharmacy Provider Network.

statutes. Lackie claims that OptumRx can thus set its rates below the cost of the prescriptions without the pharmacies discovering any under-reimbursement.

So, in November 2020, Lackie sued OptumRx[2] and several other PBMs in Arkansas state court. After the defendants removed the case to federal court, see 28 U.S.C. § 1441, Lackie amended its complaint into a putative class action raising five claims. Count 1 alleged a violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 17-92-507; Count 2, a violation of the Trade Practices Act, Ark. Code Ann. § 23-66-201; Count 3, a violation of the Unfair Practices Act, Ark. Code Ann. § 4-75-201; Count 4, civil conspiracy; while Count 5 sought declaratory and injunctive relief, Ark. Code Ann. §§ 16-111-102, 108. Lackie defined its putative class as "[a]ll independent pharmacy business entities that are citizens of Arkansas and that are operating as an independent pharmacy store(s) within the State of Arkansas during past five years . . . ." As part of its requested relief, Lackie alleged the class was entitled to recover the "actual financial losses" from being forced to sell prescriptions while being reimbursed "an amount less than [that] . . . reimburse[d to] a PBM affiliate" pharmacy.

OptumRx sought to dismiss Lackie's complaint twice over. First, joining with other defendants, OptumRx moved to dismiss Lackie's complaint for failure to comply with the pleading requirements outlined in Federal Rule of Civil Procedure 8, for failure to exhaust administrative remedies, for failure to state a claim on all five counts, and as partially preempted by Medicare Part D. OptumRx also moved to dismiss under Rule 12(b)(6) separately from the other defendants. According to OptumRx, Lackie failed to comply with certain mandatory pre-dispute procedures from the Network Agreement mandating written notice of any dispute and the opportunity for mediation between the parties. Although OptumRx attached the Network Agreement to its motion, it did not invoke the Provider Manual, which includes an arbitration clause.

---

[2]Lackie also named OptumRx Pharmacy, Inc., an affiliate of OptumRx, as a defendant. Because all claims against the affiliate pharmacy were eventually dismissed, we refer to OptumRx alone.

Lackie resisted. On the joint motion to dismiss, Lackie argued against each of the grounds raised by the defendants: its claims complied with Rule 8's notice-pleading requirements, were not subject to any administrative exhaustion requirement, and were adequately pled with respect to each of the five counts raised, and were not preempted by Medicare Part D. With regard to OptumRx's independent motion, Lackie argued that OptumRx failed to prove the existence of a valid contract such that Lackie was in fact bound by the Network Agreement.

The district court granted the motions to dismiss in part. Based on the joint motion, the court dismissed Counts 2 and 4 but retained Counts 1, 3, and 5. Furthermore, the district court denied OptumRx's individual motion. Although it noted that OptumRx's argument was "well taken," the district court concluded that there was insufficient evidence of a contract between Lackie and Elevate, so the district court could not say for certain that Lackie was in fact subject to the Network Agreement. Meanwhile, the district court also considered and disposed of each of Lackie's claims against the other defendants.[3] By the end of the motion-to-dismiss phase, only OptumRx remained as a defendant, faced with only Counts 1, 3, and 5.

OptumRx then filed its answer to Lackie's complaint. It denied each of Lackie's remaining claims and, in its list of affirmative defenses, OptumRx alleged that Lackie's claims were "subject to binding alternative dispute resolution[] procedures." The district court then issued a final scheduling order for trial, and discovery began. But, believing the district court's timeline was inadequate, OptumRx and Lackie jointly moved for a nine-month extension, which the district court granted. In January 2023, OptumRx served its initial discovery disclosures before supplementing them roughly a month later. OptumRx also responded to Lackie's first set of requests for production, producing over a hundred pages of responsive documents. After Lackie served several Rule 30(b)(6) deposition notices, the district court entered a protective order on motion of both parties.

---

[3]The claims against some defendants were dismissed on Lackie's motion, while others were dismissed, transferred to other district courts, or sent to arbitration.

Pursuant to that order, OptumRx made an additional responsive disclosure of almost 900 pages of documents. Depositions of Rule 30(b)(6) witnesses had to be rescheduled because of the delay.

Then, on May 12, 2023, the same day that OptumRx served its own requests for production, Lackie moved to amend its complaint. OptumRx did not object but purported to reserve "its right to compel arbitration." In this new complaint, Lackie retained the three claims that had survived OptumRx's motions to dismiss: its claim under the Arkansas Deceptive Trade Practices Act remained Count 1, while its claims under the Unfair Practices Act and for declaratory and injunctive relief, originally Counts 3 and 5, were relisted as Count 2 and Count 3, respectively. But Lackie made several changes. Most significantly, Lackie added two claims. It now pleaded claims for unjust enrichment and equitable estoppel in Counts 4 and 5. Lackie also amended its putative class definition, tailoring the class to OptumRx. The new complaint limited its putative class to "[a]ll pharmacy business entities that are citizens of Arkansas, that are operating within the State of Arkansas, and that have been subjected to OptumR[x]'s MAC List during past five years. . . ."

Likewise, Lackie amended its factual allegations and requests for relief to target OptumRx. For example, the original complaint alleged that defendants "force[] . . . [c]lass members to fill prescriptions without the benefit of the current MAC and . . . upon outdated information . . . with the purpose of causing [them] to lose money . . . because their cost for [a] particular drug is higher than what the[] PBM will provide them as an insurance reimbursement." Specifically pointing to the Provider Manual for the first time, the new complaint alleged that OptumRx "sets its MAC below all published medication price indexes," resulting in a reimbursement rate "below [the class members'] invoice cost in acquiring the medication." Similarly, with regard to Count 1, where the original complaint alleged that the defendants caused class members to "habitually and routinely sell prescriptions to a consumer at an actual financial loss," the new complaint alleged that OptumRx caused "actual financial losses" because OptumRx "wrongfully reduced reimbursements" by applying its MAC without complying with Arkansas's

-5-

statutory requirements. Without an objection, the district court granted Lackie's motion to file its amended complaint.

In response, OptumRx moved to compel arbitration. Pointing to the Network Agreement and Provider Manual, OptumRx argued that Lackie's claims were subject to the Provider Manual's binding arbitration clause, which requires "all disputes [to] be resolved exclusively in arbitration" and further delegates any disputes about the arbitrability of any claims to an arbitrator. Lackie once again resisted OptumRx's motion by arguing that OptumRx failed to prove a specific and binding agreement between the parties that would require arbitration. Even assuming such an agreement existed, Lackie argued, OptumRx waived any right to arbitrate by waiting more than two years to raise the issue. In response, OptumRx asserted that it could not have waived its right to arbitration until Lackie invoked the Provider Manual, which it only did in the new complaint. OptumRx further suggested that Lackie's theory of the case changed in the new complaint because it now sought relief under the Provider Manual.

At a hearing, the district court rejected Lackie's waiver argument, suggesting that the amended complaint "changed something" such that OptumRx did not waive any rights. On the merits, however, the district court ordered additional discovery specific to the motion to compel arbitration. After that discovery, Lackie for the first time conceded that it was, in fact, bound by both the Network Agreement and the Provider Manual. But Lackie argued that the Provider Manual and Network Agreement conflicted on how the parties would resolve any dispute, with the Provider Manual mandating arbitration, while the Network Agreement only required non-binding mediation. Because the Network Agreement would control in the event of any conflict, Lackie continued, the Provider Manual's arbitration clause did not control. In contrast, OptumRx asserted there was no conflict; it was possible to comply with both the Network Agreement's mediation provisions and the Provider Manual's binding arbitration requirements. In any event, OptumRx noted that the Provider Manual's delegation clause required an arbitrator to decide whether a conflict existed, so Lackie's claims had to be sent to an arbitrator either way.

After receiving supplemental briefing, the district court denied OptumRx's motion. Briefly recounting the parties' arguments, the district court stated that it "agree[d]" with Lackie that "there is a conflict between the dispute resolution process stated in the [Provider] Manual and the . . . Network Agreement, and that according to the . . . Network Agreement, the Agreement's provisions control." The district court did not mention or address the delegation clause. OptumRx immediately filed this interlocutory appeal, challenging the district court's conclusion that the Network Agreement and Provider Manual conflict, as well as its purported failure to comply with the delegation clause.

II.

OptumRx argues that the district court erred when it denied the motion to compel arbitration. But Lackie reasserts that OptumRx has waived its rights, if any, to compel arbitration. Because we can affirm on any basis adequately supported in the record, we address this argument first. See Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019). "We review de novo the legal determination of waiver but examine the factual findings underlying that ruling for clear error." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007), abrogation on other grounds recognized by Parker v. Kearney Sch. Dist., 130 F.4th 649, 653-54 (8th Cir. 2025).

"Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'" Morgan v. Sundance, Inc., 595 U.S. 411, 417 (2022) (citation omitted). "To evaluate whether a party has 'intentional[ly] relinquish[ed] or abandon[ed]' the right to arbitration, courts must determine whether it (1) knew of its 'existing right' and (2) acted 'inconsistently with' it." Parker, 130 F.4th at 654 (alteration in original) (citation omitted). We have previously held that a party "knew of its existing right to arbitration because it possessed the arbitration agreement." Messina v. N. Cent. Distrib., Inc., 821 F.3d 1047, 1050 (8th Cir. 2016), abrogated on other grounds by Morgan, 595 U.S. at 417. And "[a] party acts inconsistently with its right to arbitrate if [it] 'substantially invokes the litigation machinery before asserting its arbitration

-7-

right.'" Lewallen, 487 F.3d at 1090 (citation omitted). At first glance, OptumRx meets both of these requirements.

First, OptumRx had both the Network Agreement and the Provider Manual, so it "knew of its existing right to arbitrat[e]." See Messina, 821 F.3d at 1050; Parker, 130 F.4th at 654. It attached the Network Agreement to its original motion to dismiss, and even after the motion-to-dismiss phase, OptumRx explicitly acknowledged its right to arbitrate. In its answer, OptumRx specifically alleged that the instant claims were "subject to binding alternative dispute resolutions procedures." At the very latest, OptumRx "knew" of its arbitration rights by that point. See Sysco Minn., Inc. v. Teamsters Loc. 120, 958 F.3d 757, 762 (8th Cir. 2020) (concluding a party knew of its rights when it listed binding arbitration in its answer), abrogated on other grounds by Morgan, 595 U.S. at 417. This is particularly true where, as here, the party asserting the right to arbitrate is the one who drafted the agreement. See In re Pawn Am. Cons. Data Breach Litig., 108 F.4th 610, 614-15 (8th Cir. 2024); see also Erdman Co. v. Phoenix Land & Acquisition, LLC, 650 F.3d 1115, 1118 (8th Cir. 2011) (noting that "a sophisticated party" which "drafted the [c]ontract . . . is presumed to know its contents" (citation omitted)), abrogated on other grounds by Morgan, 595 U.S. at 417.

OptumRx claims it could not have known of its right to seek arbitration because Lackie's original complaint did not reference the Network Agreement and because Lackie argued that the Network Agreement and Provider Manual did not apply. These facts are irrelevant to our analysis. We have previously rejected the claim that an opposing party "could not have known for certain" of its right to arbitrate because it had argued the contract containing the arbitration clause *did not* apply. See Parker, 130 F.4th at 654 (citation omitted). In Parker, we noted that the defendant should have moved to compel arbitration in the alternative. Id. Here, that conclusion has even more support. From the start, OptumRx argued that Lackie was bound by the Network Agreement. Under its own theory, OptumRx knew that Lackie's claims were subject to the alternative dispute resolution procedures from

that agreement, including the Provider Manual's binding arbitration clause. See id. Lackie's resistance has no bearing on OptumRx's knowledge of its own rights.

OptumRx also acted inconsistently with those rights. It first sought arbitration almost two years after moving to dismiss Lackie's claims, "substantially invok[ing] the litigation machinery by filing" dispositive motions "and participating in the early stages of discovery." See McCoy v. Walmart, Inc., 13 F.4th 702, 705 (8th Cir. 2021) (citation omitted), abrogation on other grounds recognized by In re Pawn Am., 108 F.4th at 613. To preserve any right to arbitration, OptumRx must have done "all it could reasonably have been expected to do to make the earliest feasible determination" to invoke its arbitration rights. See Lewallen, 487 F.3d at 1091 (citation omitted). Moving to dismiss Lackie's complaint in its entirety, filing an answer with arbitration as an affirmative defense, seeking a nine-month extension of deadlines, and actively participating in discovery falls well short of that standard and cannot be described as "promptly" seeking arbitration. See McCoy, 13 F.4th at 704-05 (citation omitted) (discussing party's "participat[ion] in discovery" and motions to dismiss on multiple grounds as basis for waiver); Lewallen, 487 F.3d at 1091 (determining that waiver applied to party who participated in discovery, sought an extension of time to respond to complaint, jointly moved to continue trial, and waited approximately eleven months before seeking arbitration). OptumRx's actions here are "inconsistent with" any right to arbitration. See McCoy, 13 F.4th at 704-05. At least on the surface, these circumstances suffice to establish waiver.

OptumRx suggests, however, that it can still assert its arbitral rights because Lackie amended its complaint. While we have never addressed such an argument, several circuits have permitted a so-called "revival" of the right to seek arbitration in select circumstances. Generally, there are two such situations, both of which OptumRx claims apply here. We consider each circumstance in turn.[4]

---

[4]In doing so, we analyze each claim individually, in line with how our Court has treated motions to compel arbitration before, see Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 922 (8th Cir. 2009) (addressing a motion to compel arbitration as to some, but not all, counts), and as other courts have

The first situation arises when a plaintiff brings new claims;[5] at that point, a waived right to arbitration can be reasserted as to the newly added claims. See Forby, 13 F.4th at 466-67; Collado v. J. & G. Transp., Inc., 820 F.3d 1256, 1260 (11th Cir. 2016); Field Intel. Inc. v. Xylem Dewatering Sols. Inc., 49 F.4th 351, 360 (3d Cir. 2022); see also Dr.'s Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir. 1997) (suggesting that the "waiver of [the] right to arbitrate certain claims would not necessarily waive arbitration of other claims raised in an amended complaint"); Dickinson v. Heinhold Secs., Inc., 661 F.2d 638, 641-42 (7th Cir. 1981) (rejecting argument that defendant waived right to arbitration when plaintiff amended complaint to add arbitrable claims).

Logically, this rule makes good sense: A party cannot waive defenses to claims that have not been asserted. It is true that, under most circumstances, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." 5C Arthur R. Miller & A. Benjamin Spencer, Federal Practice & Procedure § 1388 (3d ed. 2025). But that rule applies only to "available" defenses, and the right to seek arbitration is not available until an arbitrable claim is raised. See id. So, a defendant retains its right to compel arbitration on new claims that "were not in the case when it waived by litigation the right to arbitrate" those

---

recognized explicitly, see Forby v. One Techs., L.P., 13 F.4th 460, 462, 466 (5th Cir. 2021) ("[W]aivers of arbitral rights are evaluated on a claim-by-claim basis."). See also KPMG LLP v. Cocchi, 565 U.S. 18, 19 (2011) (per curiam) (recognizing that a dispute might present "multiple claims, some arbitrable and some not," and requiring courts to determine whether each individual claim is arbitrable).

[5]It is important to clarify what we mean by a "claim." For purposes of waiving arbitral rights, a claim is a single count or cause of action in a complaint. See KPMG, 565 U.S. at 21-22. We do not define "claim" as we do in other contexts. See, e.g., Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (defining "claim" for *res judicata* purposes as "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of transactions, out of which the action arose" (citation omitted)); see also Forby, 13 F.4th at 466 n.12 (discussing these distinctions).

originally asserted. See Collado, 820 F.3d at 1260-61; see also Federal Practice & Procedure § 1388 (noting that "defense[s] that become[] available because of new matter in the amended complaint may be asserted by motion"). We adopt this reasoning and hold that a waiver of arbitral rights only applies to claims that were actually pled, not hypothetical ones not yet raised. See Forby, 13 F.4th at 466.

Thus, while not technically a "revived" right, OptumRx can seek arbitration on any new claims in Lackie's amended complaint. See id. at 464-65, n.7. Applying that rule here is straightforward. The new complaint included two new claims: unjust enrichment in Count 4 and equitable estoppel in Count 5. Those claims were absent from all earlier pleadings, so any waiver does not and could not extend to those counts. See Collado, 820 F.3d at 1261. In contrast, however, the three other counts in the amended complaint are not new. They were present in the original complaint and alleged the same claims for relief. OptumRx knew these claims existed and moved to dismiss them rather than move to compel arbitration. But OptumRx argues that it can nonetheless seek arbitration on these counts because they fall within the second circumstance permitting revival.

This second situation arises when an amended complaint "unexpectedly changes the scope or theory of the plaintiff's claims"; several courts have held that, in such a circumstance, a waived right to compel arbitration is "revived." Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011); see Gilmore v. Shearson/Am. Express Inc., 811 F.2d 108, 113 (2d Cir. 1987) (requiring changes that "in fairness, should nullify [an] earlier waiver"), overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988); Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) (permitting reassertion when "[t]he shape of the case" changes such that "the party should be relieved from its waiver"); Manasher v. NECC Telecom, 310 F. App'x 804, 806-07 (6th Cir. 2009) (holding that amendments which did not "substantially alter the scope or theory of the case such that it created new and different issues" were insufficient to revive any right to compel arbitration).

Critically, however, that a plaintiff amended its complaint "does not automatically revive all defenses or objections that the defendant may have waived in response to the initial complaint." Krinsk, 654 F.3d at 1202; cf. Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1011 (8th Cir. 2002) (holding that waived right to jury trial could not be reasserted upon filing of an amended complaint with "no new triable issues"). Rather, the amended complaint must bring about an unexpected and material change to the "scope or theory" of the case. See Krinsk, 654 F.3d at 1202; Cabinetree, 50 F.3d at 391. Mere factual alterations are insufficient, as are amendments which only "restate[], in . . . a clearer and more orderly fashion, the claims arising out of the matters already pleaded and dealt with" in a prior motion. Krinsk, 654 F.3d at 1203 (second alteration in original) (citation omitted). So, assuming its waived right can be revived,[6] there must be some reason that OptumRx "should be relieved from its waiver." See Cabinetree, 50 F.3d at 391. OptumRx highlights several changes which, in its view, provide such a reason.

First, OptumRx suggests that the altered class definition is sufficient to revive its right to arbitration. While such an amendment could "unexpectedly expand the litigation's scope," see Krinsk, 654 F.3d at 1203, the new class here does not do so. In contrast to amendments which "open[] the door to thousands—if not tens of thousands—of new class plaintiffs," see id., the class in Lackie's new complaint appears smaller than the one originally contemplated. The original class included "[a]ll independent pharmacy entities that are citizens of Arkansas" which had contracted with any of the named defendants "during [the] past five years." As amended, that class was narrowed to only those Arkansas "pharmacy business entities" "that ha[d] been subjected to OptumR[x]'s MAC [l]ist" during that same timeframe. On its face, the new class is more limited than the original one. At the

---

[6]Because we hold that the new complaint does not satisfy this standard, we do not decide whether a waived right to arbitration can be revived under the right circumstances or whether, as Lackie asserts, this revival argument is an "arbitration-specific variant" of normal procedural rules that is barred by Morgan, 596 U.S. at 411. But see Burton v. Ghosh, 961 F.3d 960, 967-68 (7th Cir. 2020) (applying the rule from Krinsk to *res judicata* defense).

very least, given how the litigation progressed, this is not an "unexpected" change in scope sufficient to revive a waived right. Contra id. (addressing class definition with expanded class of plaintiffs and longer timeframe). The amended class matches the amended scope of the case: claims seeking relief for OptumRx's allegedly unlawful reimbursement practices.

OptumRx also points to the fact that the amended complaint referenced OptumRx's MAC list in both its factual allegations and claims for relief. According to OptumRx, the case was originally about the withholding of information, while the new complaint alleges violations of the Provider Manual. But comparing the complaints undermines this assertion. Both allege violations of the same Arkansas statutes. Likewise, both complaints allege that the defendants withheld access to statutorily required MAC lists and, in doing so, caused Lackie to lose money by reimbursing a lower value than what Lackie actually paid. The only difference is that the new complaint references OptumRx and its MAC list specifically. This change is not unexpected. At the time the lawsuit was filed, there were eleven defendants unaffiliated with OptumRx. Those defendants would not use OptumRx's MAC list, nor would they be subject to OptumRx's Provider Manual. The original complaint had to plead broader facts applicable to all defendants, not just OptumRx. Indeed, OptumRx originally argued that the original complaint lacked specific allegations as required by Rule 8(a). The changes to the pleadings in that regard only focus the claims on the named defendant. With only OptumRx remaining, it is not unexpected that an amended complaint would focus on OptumRx alone. See Gilmore, 811 F.2d at 113-14 (affirming finding of waiver where plaintiff "only correct[ed] a minor factual allegation").

Finally, OptumRx relies on Lackie's altered requests for relief.[7] In Count 1 of the new complaint, Lackie asserted that it "ha[s] suffered actual financial losses"

---

[7]OptumRx notes that Lackie added a request for treble damages under Count II and punitive damages as to all counts. To the extent those changes are even "unexpected," see Krinsk, 654 F.3d at 1203, OptumRx "never mentioned these changes and never relied upon them as a basis for reviving its right to . . . compel

-13-

"[a]s a proximate result of OptumR[x]'s violations of [state law]." Lackie requested an award based on a recalculated reimbursement rate without the MAC calculation. In the original complaint, Lackie likewise alleged that it suffered "actual financial loss" because the defendants compelled it to sell prescriptions "to consumers without fair and proper, but instead anticompetitive insurance reimbursements," with those losses "calculable from [Lackie's] records." Like the amended factual allegations, these changes do not "unexpectedly expand the litigation's scope." Krinsk, 654 F.3d at 1203. The requested relief in each complaint mirrors the parties against whom relief is sought. In the original, the requested relief was broad, as there were more defendants with different reimbursement practices. In the new complaint, only OptumRx remained, so Lackie tailored its requested relief to OptumRx's conduct.

None of these amendments "unexpectedly change[d] the shape of the case," see id., nor were the claims "so alter[ed]" that OptumRx's waiver should be excused, see Cabinetree, 50 F.3d at 391. The new complaint merely "restate[s], in . . . a clearer and more orderly fashion, the claims arising out of the matters already pleaded and dealt with." Krinsk, 654 F.3d at 1203 (citation omitted). Nothing in the new complaint relieves OptumRx of its waiver on Counts 1 through 3. Accordingly, OptumRx waived its right to compel arbitration of those three counts.

III.

Because OptumRx has not waived its right to arbitrate Count 4 or Count 5, however, it can assert its arguments that those claims are subject to arbitration. See Forby, 13 F.4th at 466-67. "We review the denial of a motion to compel arbitration de novo. We also review the district court's interpretation of a contract de novo and its factual findings for clear error." Triplet v. Menard, Inc., 42 F.4th 868, 870 (8th Cir. 2022) (emphasis omitted) (citations omitted). OptumRx makes two arguments

_____

arbitration" before the district court, see Gilmore, 811 F.2d at 113. "Ordinarily, we do not consider an argument raised for the first time on appeal," and we see no reason to do so in this case. Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016) (citation omitted).

-14-

in support of its motion to compel: that Lackie's claims are subject to arbitration because the Provider Manual and Network Agreement do not conflict, and that an arbitrator is to decide whether that is in fact true. We need only address the latter.

"[A] court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator." Benchmark Ins. Co. v. SUNZ Ins. Co., 36 F.4th 766, 772 (8th Cir. 2022) (alteration in original) (citation omitted). Importantly for our purposes, this rule applies to delegation clauses—those requiring an arbitrator to decide whether a dispute is subject to arbitration. See Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65, 69 (2019) (noting that parties can "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions"); Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC, 756 F.3d 1098, 1100 (8th Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration . . . is a threshold question of arbitrability."). To avoid a delegation clause, the party resisting it must "challenge[] the delegation provision specifically." See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 72 (2010). Absent such a challenge, however, "the courts must respect the parties' decision" to "delegate[] the arbitrability question to an arbitrator." Henry Schein, 586 U.S. at 71.

The delegation clause from the Provider Manual applies to this dispute. Lackie now admits it is bound by the Network Agreement, which incorporates the Provider Manual. The Provider Manual's delegation clause directs that "all questions of arbitrability" must be resolved "exclusively by binding arbitration" under the American Arbitration Association's rules and procedures.[8] Whether the instant dispute is subject to arbitration "is a threshold question of arbitrability." See Eckert, 756 F.3d at 1100 (noting that incorporation of arbitration organization rules is a "clear and unmistakable indication [that] the parties intended for the arbitrator to decide threshold questions of arbitrability"). Because Lackie has not argued that

---

[8]While there are different editions of the Provider Manual with slightly different wording that applied at various periods, all iterations are materially the same in requiring such disputes to be resolved by an arbitrator.

the delegation clause itself is invalid or inapplicable, the district court should have "respect[ed] the parties' decision" to "delegate[] the arbitrability question to an arbitrator" and granted OptumRx's motion to compel on that basis. See Henry Schein, 586 U.S. at 71. Regardless of whether the underlying claims are ultimately subject to arbitration, the district court should not have addressed the issue in the presence of a clause delegating that responsibility to the arbitrator. See Benchmark Ins. Co., 36 F.4th at 772; Henry Schein, 586 U.S. at 65.

Lackie's sole argument on appeal is that, under Coinbase, Inc. v. Suski, 602 U.S. 143 (2024), the district court must decide whether the instant dispute is subject to arbitration. In Coinbase, the parties had two contracts: one mandating arbitration—including disputes about arbitrability—and a separate contract designating California courts as the appropriate forum. Id. at 145. Thus, the Supreme Court had to decide "[w]hat happens if parties have multiple agreements that conflict as to . . . who decides arbitrability," and held that, "before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls." Id. at 145, 149. According to Lackie, this case presents an analogous situation.

We are not convinced. First, unlike the plaintiff in Coinbase, Lackie has never challenged the delegation clause. See id. at 150-51. Second, Coinbase involved a different circumstance. There, the parties had two *different* contracts but disputed which one governed. Id. at 147 (noting that parties "had executed two contracts"). Here, there is one contract, the Network Agreement, which incorporates the Provider Manual's arbitration and delegation clause. Coinbase even distinguished itself from a situation like this one: "[W]here parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." Id. at 152. Coinbase thus provides Lackie no relief.

Lackie and OptumRx now agree that the Network Agreement and Provider Manual apply. As part of that agreement, the parties agreed to resolve certain

-16-

disputes through arbitration, and they further agreed to let the arbitrator decide whether a given dispute was subject to arbitration. Lackie has not challenged that delegation clause, and, therefore, the district court erred by addressing whether the Provider Manual and Network Agreement conflict.[9] Accordingly, the district court erred in denying OptumRx's motion to compel arbitration as to Counts 4 and 5.

## IV.

For these reasons, the judgment of the district court is affirmed in part and reversed and remanded in part. On remand, the district court should grant OptumRx's motion to compel arbitration as to Counts 4 and 5.

_____

[9]Because the district court erred on the threshold delegation clause issue, we do not address OptumRx's argument that the underlying claims are, in fact, arbitrable. Under the delegation clause, the arbitrator must decide in the first instance if OptumRx is correct. See Henry Schein, 586 U.S. at 65.